STATE v. WALTER HIGHTOWER.

(Filed 31 January, 1946.)

**1. Criminal Law § 79—**

Assignments of error not brought forward in defendant's brief and in support of which no reason or argument is stated or authority cited are deemed abandoned. Rule 28.

**2. Criminal Law § 53i—**

A charge that the jury should consider the testimony of defendant in the light of his interest in the verdict and in the "outcome of the trial" is not error.

**3. Same—**

A charge on the credibility of defendant's testimony which uses the phrase "if you come to the conclusion that he is telling the truth" is without error.

**4. Homicide § 27c—**

Since the enactment of the statute dividing murder into degrees, C. S., 4200, G. S., 14-17, the use of the adjective "aforethought" in charging upon murder in the first degree is not required, the definition and use of the term "premeditation and deliberation" being sufficient.

**5. Homicide § 27a—**

The use of the term "the implement offered in evidence and referred to by witnesses as a knife" *is held* a sufficiently definite reference to the weapon offered in evidence, it appearing that the jury could not have misunderstood.

**6. Homicide § 1c—**

A sharp, thick, pointed blade six inches long, sufficient when stabbed into the body of another to reach and penetrate the heart, is, when so used, *per se* a deadly weapon.

**7. Homicide § 7a—**

Mere words, however abusive, are not sufficient provocation to reduce murder in the second degree to manslaughter, but legal provocation must be circumstances amounting to an assault or threatened assault.

**8. Homicide § 27f—**

In this prosecution for murder in the first degree *it is held* that the court below fairly and fully presented defendant's cause, both as to the law and evidence, on defendant's defenses of insanity, drunkenness, provoked assault, and self-defense.

APPEAL by defendant from *Bobbitt, J.,* at August Term, 1945, of WILKES. No error.

Criminal prosecution on bill of indictment charging that defendant did kill and murder one William Bunker.

Defendant and deceased were prisoners confined in a prison camp located in Wilkes County. Some time shortly prior to the homicide the defendant had been put in solitary confinement for a period of days. He believed that this was due to the fact the deceased had reported to the prison officials certain acts of sex perversion by defendant. Being incensed thereby, he had made a number of threats against deceased, the object of his unnatural love.

On Sunday, 1 April, 1945, the prisoners were in camp, more or less at ease. Bunker, the deceased, and two other prisoners were passing. ball in the yard outside the cell block. The defendant went to the yard and told Bunker he wanted to see him. He put his arm around Bunker and they walked into the cell block and continued on down about midway the cell block while the defendant still held Bunker around his waist. As they proceeded defendant had a knife-like weapon in his hand and Bunker was holding defendant's wrist. Bunker cried out to the twenty-odd prisoners in the cell block, asking for help and pleading that they stop defendant and not let defendant kill him. They in turn shouted to defendant, telling him not to kill Bunker, but they did nothing further to interfere.

Bunker lost his hold on defendant's wrist. Defendant then tripped Bunker, who fell to the floor. Thereupon defendant stabbed him several times with the weapon. He said, "G—— d—— you, I told you I was going to kill you." Bunker managed to get up and run to the sink. Defendant caught up with him, knocked him down,. and stabbed him five or six times. Two of the stab wounds entered the heart, causing the death of Bunker before he reached the hospital.

The weapon used by defendant was a hand-made knife or dirk-like instrument, having a wood handle and a blade six inches long. The

blade was set in the handle, was sharp on both sides and was pointed on the end. It was about $\frac{3}{16}$ inch thick and $\frac{3}{4}$ inch wide.

There was a verdict of guilty of murder in the first degree. The court pronounced judgment of death and defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Rhodes, Moody, and Tucker for the State.*

*J. Allie Hays and Eugene Trivette for defendant, appellant.*

BARNHILL, J. The record contains seventy assignments of error. Of these, eleven are brought forward and noted in defendant's brief. The others, in support of which no reason or argument is stated or authority cited, are deemed to be abandoned. Rule 28, 221 N. C., 562; *S. v. Abernethy,* 220 N. C., 226, 17 S. E. (2d), 25; *S. v. Miller,* 219 N. C., 514, 14 S. E. (2d), 522; *S. v. Howley,* 220 N. C., 113, 16 S. E. (2d), 705; *Bank v. Snow,* 221 N. C., 14, 18 S. E. (2d), 711.

In its charge the court cautioned the jury they should consider the testimony of the defendant "in the light of his interest in your verdict, and in the outcome of the trial." The use of the term "in the outcome of the trial" does not constitute a substantial departure from language we have heretofore approved. The outcome of the trial depends upon and is controlled by the outcome of the verdict. Essentially they are one and the same. *S. v. Davis,* 209 N. C., 242, 183 S. E., 420; *S. v. Auston,* 223 N. C., 203, 25 S. E. (2d), 613.

Defendant likewise excepts to the use of the language "if you come to the conclusion that he is telling the truth." The exception is without merit. To find is to arrive at a conclusion. Webster's Int. Dict. So then, "if you find," "if you are convinced" and "if you come to the conclusion" are equivalent and synonymous expressions. The use of one in preference to another is not prejudicial.

In defining murder in the first degree, and particularly the element of malice, the court did not use the adjective "aforethought." In this there was no error. *S. v. Smith,* 221 N. C., 278, 20 S. E. (2d), 313. "Malice aforethought" was a term used in defining murder prior to the time of the adoption of the statute dividing murder into degrees. As then used it did not mean an actual, express or preconceived disposition; but imported an intent, at the moment, to do without lawful authority, and without the pressure of necessity, that which the law forbade. *S. v. Crawford,* 13 N. C., 425. As used in C. S., 4200, now G. S., 14-17, the term "premeditation and deliberation" is more comprehensive and embraces all that is meant by "aforethought," and more. Hence the use of "aforethought" is no longer required.

The weapon used by the defendant had been minutely described. It had been offered in evidence and exhibited to the jury. The court referred to it as "the implement offered in evidence and referred to by witnesses as a knife." No further definition of "implement" was required. As used by the court it meant the weapon offered in evidence. This was as definite and certain as it was possible for the court to make it. It is inconceivable that the jury could have misunderstood.

Nor did the court err in instructing the jury that the implement, when used to stab another in the manner described by witnesses, was a deadly weapon. It had a sharp, thick, pointed blade six inches long, sufficient, when stabbed into the body of another, to reach and penetrate the heart. It was when so used *per se* a deadly weapon. The court correctly so instructed the jury. *S. v. West,* 51 N. C., 505; *S. v. Huntley,* 91 N. C., 617; *S. v. Sinclair,* 120 N. C., 603; *S. v. Beal,* 170 N. C., 764, 87 S. E., 416.

The court further instructed the jury "that legal provocation that will reduce murder in the second degree to manslaughter must be more than mere words, for language, however abusive, neither excuses nor mitigates the killing," and "the law does not recognize circumstances as a legal provocation which in themselves do not amount to an assault or a threatened assault." Such is the law in this jurisdiction. *S. v. Benson,* 183 N. C., 795, 111 S. E., 869; *S. v. Kennedy,* 169 N. C., 288, 84 S. E., 515. Here it was the deceased and not the defendant who is alleged to have used abusive language and thus induced the assault which resulted in death. *S. v. Robinson,* 213 N. C., 273, 195 S. E., 824; *S. v. Rowe,* 155 N. C., 436, 71 S. E., 332; *S. v. Crisp,* 170 N. C., 785, 87 S. E., 511.

The defendant excepts for that the court committed error in failing to charge the jury as to what constitutes excusable homicide. In this connection he insists that deceased assaulted defendant by calling him a "G—— d—— black s.o.b.," and the court failed to apply the law applicable to this nonfelonious assault. A careful review of the charge fails to disclose any merit in this exception. The court below fairly and fully presented the defendant's cause, both as to the law and the evidence, on his defenses of (1) insanity, (2) drunkenness, (3) provoked assault, and (4) self-defense. There was no evidence which, if accepted, would justify an acquittal on the grounds of self-defense. There is little support for the contention that defendant's assault on deceased was made in the heat of passion induced either by abusive language or an assault or a threatened assault. Yet the court below very carefully explained the law of manslaughter as applied to the evidence offered and defined and explained the law of self-defense. In this manner as well as in the state-

3—226

ment of contentions it gave defendant the full benefit of every possible aspect of the testimony favorable to him.

Counsel assigned to defend this prisoner have presented his cause with that degree of diligence and fidelity the public has come to expect from members of the legal profession of this State. They have pointed out and sought review of every possible criticism of the charge. These exceptive assignments of error as well as the case as a whole have received consideration commensurate with the gravity of the case. No cause for disturbing the verdict is made to appear.

In the trial below we find

No error.