STATE v. LUCILLE ROPER FURLEY.

(Filed 12 December, 1956.)

**1. Criminal Law §§ 31d, 81c(3)—Form of testimony of expert witness held not prejudicial under facts of this case.**

While expert opinion evidence must be based upon facts within the witness' personal knowledge or upon the hypothesis of the finding of stipulated facts by the jury, testimony of an expert witness in an abortion prosecution that it was quite possible that pregnancy could be interrupted in such a fashion as described by a prior witness, cannot be held for prejudicial error when, under the circumstances of the case, the witness must have been referring to articles and instruments then before the jury as exhibits, and in view of the subsequent testimony of the same witness, to which no objection was noted, to the same import, it being apparent that the matter could not have improperly influenced the result.

**2. Criminal Law § 50d—**

The interrogation of a witness by the court solely to obtain a definite answer to a question theretofore asked the witness by defendant's counsel *held* not prejudicial, the interrogation not tending to discredit the witness or express an opinion.

**3. Criminal Law §§ 53b, 53d—**

The court's charge on reasonable doubt and the caution given the jury in the admission of evidence in corroboration *held* without error.

JOHNSON, J., not sitting.

APPEAL by defendant from *Williams, J.,* March Term, 1956, of CUMBERLAND.

The defendant was indicted for using instruments on the body of one Maline Brewington for the purpose of causing a miscarriage, in violation of G.S. 14-45.

There was evidence on the part of the State tending to show that Maline Brewington, an unwed girl eighteen years of age, being pregnant, went to the home of the defendant in Fayetteville and asked her to produce an abortion. She testified that the defendant agreed to do

so for $35, and that pursuant to this arrangement, at the defendant's home, the defendant applied to the body of the witness an instrument which she described; that thereafter the abortion was accomplished and the two or three months old foetus destroyed and discharged, resulting in severe illness to the witness.

Several small metal objects, wires and rubber tubing were found by an officer in defendant's room, and were identified and offered in evidence at the trial.

Dr. Foster, a physician and County Health Officer, admitted by defendant as qualified to testify as an expert, examined the witness Maline Brewington, and testified she had had a miscarriage. He also testified in corroboration of the statements she made to him. He was asked if "from the application of the instrument, objects and wires which Maline Brewington said to you were made upon her body by Lucille Roper Furley, do you have an opinion satisfactory to yourself as to whether or not that would cause a miscarriage?" Objection by defendant was overruled. The witness answered: "It is quite possible that pregnancy could be interrupted in such a fashion as described to me by Maline." He subsequently testified without objection that among the objects exhibited in evidence was a catheter with a piece of wire inserted inside the catheter, also forceps and an unusual style of scissors; that he couldn't say that every one of these objects was foreign to anything pertaining to miscarriage. "There is something in that, as I just described, that could be used in a hospital or elsewhere pertaining to a miscarriage."

The defendant denied that she had performed any operation or used any instrument to produce a miscarriage on Maline Brewington; that Maline had never been to her house; that she did not know her before these charges were made. She further testified that the objects offered as exhibits were either ordinary household objects, or some articles of junk, she having been in the junk business in 1954. She offered evidence of her good character, and there was evidence by the State *contra*.

The jury returned verdict of guilty as charged, and from judgment imposing sentence the defendant appealed.

*Attorney-General Patton and Assistant Attorney-General McGalliard for the State.*

*Nance, Barrington & Collier for defendant, appellant.*

DEVIN, J. The defendant was convicted of the sordid crime of using instruments to produce an abortion on the person of one Maline Brewington. The evidence offered by the State was sufficient to sustain the charge set out in the bill of indictment and to support the verdict and

judgment, but the defendant assigns errors in the trial which she contends were sufficiently prejudicial to entitle her to another hearing.

As the basis of her appeal, in her brief, she presents two questions for review:

1. The State's witness Maline Brewington testified as to the manner and means and to the fact of the abortion performed on her by the defendant. Certain metal and rubber articles which had been found in the defendant's room were without objection offered in evidence as exhibits. Dr. Foster, a medical expert, testified in corroboration of the State's witness as to the means by which the abortion was brought about as described by her. Dr. Foster was asked whether the use of the instruments described upon the body of the State's witness could cause a miscarriage. Defendant's objection to the question was overruled and Dr. Foster stated: "It is quite possible that pregnancy could be interrupted in such a fashion as described to me by Maline."

The general rule undoubtedly is that the expression of an opinion as to a material matter in issue, even by an expert, to be competent as evidence must have been based on facts within the witness' personal knowledge or upon the hypothesis of the finding by the jury. *Patrick v. Treadwell*, 222 N.C. 1, 21 S.E. 2d 818. However, we do not think in view of all the evidence in this case the circumstances under which this question arose and the subsequent testimony of Dr. Foster, to which no objection was noted, that prejudicial error should be predicated upon the statement quoted. *Summerlin v. R. R.*, 133 N.C. 550, 45 S.E. 898; *Hester v. Motor Lines*, 219 N.C. 743, 14 S.E. 2d 794; Stansbury, page 240.

In *S. v. Shaft*, 166 N.C. 407, 81 S.E. 932, where a similar situation arose in an abortion case, we find this language in the opinion of the Court:

"Exceptions 3, 4, 5, and 6 relate to the competency of certain witnesses to testify as experts, and to their qualifications as such. A previous witness had testified that the capsule offered in evidence, and some of which had been administered to the girl, contained aloes, and these witnesses as experts were permitted to testify as to the effect of this drug upon pregnancy, when administered in large doses. We see no objection to the competency of this evidence."

From the original record in the *Shaft case* it appears that the exceptions referred to by number in the Court's opinion related to the testimony of Dr. Sevier. This witness had been asked the question whether or not aloes had a tendency to produce an abortion, and he replied over objection, "Aloes in an excessive dose I should think would have an indirect tendency to produce an abortion." Similar questions were asked Dr. Morris, and similar answer elicited. In our case, Dr. Foster apparently had in mind the articles and instruments which were then

before the jury as exhibits. We do not think the admission of the statement objected to was of sufficient moment to have improperly influenced the result, or to require a new trial. *Rea v. Simowitz,* 226 N.C. 379, 38 S.E. 2d 194.

2. The defendant assigns error in the action of the trial judge in propounding questions to the defendant's witness Godwin. This witness, on direct examination, had testified that in 1954 the defendant was buying and selling junk, and that at the place where witness worked there was some junk from Fort Bragg—odds and ends from hospital supply—and that looking at the State's exhibits he thought they had some things of that nature. Asked to look at a pitcher, a ladle, some small wires, he said, "We did have something of that nature." "The Court: He asked you whether or not you had them. A. I would hate to say on that definitely because there was so much junk out there and people came and looked at it and I didn't never go through it. The Court: Did you have it? A. No, I wouldn't say we did."

Obviously the court was endeavoring to obtain a definite answer to the question asked by defendant's counsel. We do not think the court's questions tended to discredit the witness or to express an opinion. *Andrews v. Andrews,* 243 N.C. 779, 92 S.E. 2d 180; *S. v. Kimrey,* 236 N.C. 313, 72 S.E. 2d 677.

In addition to the two questions presented for consideration in defendant's brief, additional assignments of error were brought forward in defendant's appeal, based on exceptions to the judge's charge to the jury in defining reasonable doubt, and in the caution given the jury in the admission of evidence in corroboration. We observe, however, that the court's statement of the rule as to reasonable doubt is in accord with approved precedents (*S. v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133), and that the caution to the jury with reference to evidence admitted for the purpose of corroboration seems to be in substantial compliance with Rule 21.

In the trial we find no error of which the defendant can justly complain.

No error.

JOHNSON, J., not sitting.