### STATE v. THELMA BRACY BROOKS.

(Filed 25 May, 1966.)

**1. Criminal Law § 162—**

Where, in a prosecution for abortion, a witness is permitted to testify that subsequent to the time in question she took a number of girls to defendant to get the same operation, the refusal of the court to grant defendant's demand that the witness name the girls so that defendant could deny that such girls had come to her, cannot be prejudicial when defendant had testified that she did not know prosecutrix and that prosecutrix had never been to defendant's house prior to defendant's arrest, since such denial is sufficient to cover any visit by the prosecutrix prior to defendant's arrest, either alone or with another person.

**2. Abortion § 3;   Criminal Law § 53—**

In a prosecution for abortion, it is competent for a medical expert to testify that the described treatment of a pregnant woman might cause an abortion.

MOORE, J., not sitting.

APPEAL by defendant from *Bickett, J.,* October 1965 Criminal Session of DURHAM.

Criminal prosecution on bill of indictment charging that defendant on October 8, 1964, "unlawfully, willfully and feloniously did administer to a pregnant woman, to wit: one Donna Lee Merritt and did prescribe for such pregnant woman, to wit: Donna Lee Merritt with intent thereby to procure the miscarriage of said woman and did use an instrument or application for the purpose of procuring the miscarriage of said pregnant woman, to wit: Donna Lee Merritt and with intent to do so, in violation of G.S. 14-45," etc.

Evidence was offered by the State and by defendant.

The jury returned a verdict of guilty as charged and judgment, imposing a prison sentence, was pronounced. Defendant excepted and appealed.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*

*A. H. Borland and Blackwell M. Brogden for defendant appellant.*

PER CURIAM. There was ample evidence to support the verdict. Indeed, defendant does not bring forward her exceptions to the court's denial of her motions for judgment as of nonsuit.

The State's evidence tends to show Miss Merritt, in October 1964, was 18 years old, resided and attended college in Greensboro,

and that the alleged crime was committed by defendant in defendant's residence in Durham.

On direct examination, Miss Merritt testified that between her own experience in October 1964 and the arrest of defendant in June 1965 she had taken five girls to defendant "to get them abortions, too." On cross-examination, defendant's counsel elicited testimony that each of these five girls lived or attended school in Greensboro. Defendant's counsel then asked: "What *(sic)* are they?" The court sustained the State's objection. Defendant excepted to and assigns as error the court's ruling.

Whether testimony relating to Miss Merritt's visits to defendant subsequent to her own experience in October 1964 was competent is not presented. Defendant did not object to or move to strike any part thereof. There is no suggestion defendant desired to issue subpoenas for the five girls referred to in Miss Merritt's testimony. The reason assigned by defendant's counsel was that, unless the names were disclosed, defendant was deprived of an opportunity to testify that "(t)hat girl hasn't been to my house." Actually, defendant testified she did not know Miss Merritt and that Miss Merritt had never been to defendant's house before the date in June 1965 when defendant was arrested. This denial was sufficient to cover any visit by Miss Merritt prior to said date in June 1965 either alone or with another person. In the circumstances, the sustaining of the State's objection to defendant's question, "What *(sic)* are they?" was not prejudicial error.

The State offered evidence tending to show that Miss Merritt's abortion was accomplished by insertion of a catheter tube in her uterus.

Defendant's brief presents this question: "Did the court commit error in allowing the expert witness Dr. June U. Gunter to answer a question as to the cause of abortion without laying the proper hypothetical basis for said question?"

Included in the record of Dr. Gunter's testimony is the following:

"Q. A catheter tube into the uterus of Donna Lee Merritt and that they find beyond a reasonable doubt that that tube was left inserted in there for some number of hours, approximately thirty, do you have an opinion satisfactory to yourself as to whether that could have caused Donna Lee Merritt to abort? Objection — Overruled — Exception. COURT: I believe I will sustain that objection. Q. Can you explain to the Court and the jury the effect of inserting a tube of that sort into the uterus of a pregnant woman? Objection — Overruled — Exception. A. When such a tube is inserted into the uterus of a pregnant woman, the products of conception,

the placenta and the fetus are disturbed. The blood supply is disturbed, the membranes about the developing fetus may be ruptured, and the — MR. BORLAND: Did I understand you to say 'may be'? A. Yes, sir, may be ruptured, and this is very apt to result in an abortion. This is DEFENDANT'S EXCEPTION #7. Motion to Strike; Overruled — Exception. This is DEFENDANT'S EXCEPTION #8."

Defendant's assignment of error based on said exceptions is untenable. The objection to the question as to what caused Miss Merritt to abort was sustained. The admitted testimony of Dr. Gunter related generally to "the effect of inserting a tube of that sort into the uterus of a pregnant woman." The evidence was competent. In *S. v. Shaft,* 166 N.C. 407, 81 S.E. 932, discussed and approved in *S. v. Furley,* 245 N.C. 219, 95 S.E. 2d 448, involving a similar prosecution, the doctor was asked whether aloes had a tendency to produce an abortion and was permitted, over objection, to answer as follows: "Aloes in an excessive dose I should think would have an indirect tendency to produce an abortion." See *S. v. Furley, supra,* p. 221.

While defendant's other assignments of error have been considered, none discloses prejudicial error or merits discussion.

No error.

MOORE, J., not sitting.